AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>ONE MOTOROLA MOTO G STYLUS 5G CELLULAR TELEPHONE WITH<br>INTERNATIONAL MOBILE EQUIPMENT IDENTITY NUMBER 356611281087480,<br>CURRENTLY LOCATED IN THE CUSTODY OF THE DRUG ENFORCEMENT<br>ADMINISTRATION IN THE EASTERN DISTRICT OF NEW YORK | )<br>)<br>)<br>)<br>)<br>)   Case No.   22-MJ-773 |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

     An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Eastern     District of     New York
*(identify the person or describe the property to be searched and give its location)*:

     See Attachment A.

     I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

     See Attachment B.

     **YOU ARE COMMANDED** to execute this warrant on or before     August 1, 2022     *(not to exceed 14 days)*
   ❑ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

     Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

     The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     the Duty Magistrate Judge     .
                                                           *(United States Magistrate Judge)*

     ❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
     ❑ for _____ days *(not to exceed 30)*    ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:    _____     _____
                                                                      *Judge's signature*

City and state:     Brooklyn, New York       Hon. Ramon E. Reyes, Jr.     U.S.M.J.
                                                                   *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>    22-MJ-773 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

                                                            _____
                                                                    *Executing officer's signature*

                                                            _____
                                                                    *Printed name and title*

## ATTACHMENT A

The property to be searched is particularly described as one Motorola Moto G Stylus 5G cellular telephone with International Mobile Equipment Identity ("IMEI") number 356611281087480, currently located in the custody of the Drug Enforcement Administration ("DEA") in the Eastern District of New York (the "SUBJECT DEVICE").

This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records and information on the SUBJECT DEVICE described in Attachment A that constitute fruits, evidence and instrumentalities of violations of 18 U.S.C. § 922(a)(5) (unlawful firearms trafficking) involving LAQASHA DOUGLAS ("DOUGLAS") and any co-conspirators from May 1, 2020 to the present, including:

        a.      communications relating to the purchase, sale, transfer, transportation, or delivery of firearms;

        b.      any internet or search history relating to the purchase, sale, transfer, transportation, or delivery of firearms;

        c.      photographs, videos, notes, or sound recordings relating to the purchase, sale, transfer, transportation, or delivery of firearms; and

        d.      financial records relating to the purchase, sale, transfer, transportation.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the law enforcement agents may deliver a complete copy of the seized or copied

electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

NJM/MWG
F. #2020R00865/OCDETF#NY-NYE-0898

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF
ONE MOTOROLA MOTO G STYLUS 5G
CELLULAR TELEPHONE WITH
INTERNATIONAL MOBILE EQUIPMENT
IDENTITY NUMBER 356611281087480,
CURRENTLY LOCATED IN THE
CUSTODY OF THE DRUG
ENFORCEMENT ADMINISTRATION IN
THE EASTERN DISTRICT OF NEW YORK

APPLICATION FOR
A SEARCH WARRANT FOR AN
ELECTRONIC DEVICE

Case No. 22-MJ-773

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, MILTON CASIANO, being first duly sworn, hereby depose and state as

follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the

Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the

electronic device particularly described below and in Attachment A, and the extraction from such

device of electronically stored information particularly described in Attachment B.

2.      I am a Task Force Officer with the Drug Enforcement Administration

("DEA") and an Investigator with the New York State Police.  I have been a DEA Task Force

Officer and an Investigator with the New York State Police since approximately 2019, and I

previously served as a Trooper with the New York State Police since approximately 2013.  As

part of my work with the DEA, I investigate firearms trafficking offenses, among others.  These

investigations are conducted both overtly and covertly and frequently involve the review and use

of evidence obtained from electronic devices.  Through my training, education, and experience, I have become familiar with the manner in which firearms trafficking offenses are conducted, as well as the uses and capabilities of cellular telephones.  I have also participated in the execution of search warrants involving evidence of firearms offenses, including searches of electronic devices.

3.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## THE SUBJECT DEVICE

4.     The electronic device to be searched is particularly described as one Motorola Moto G Stylus 5G cellular telephone with International Mobile Equipment Identity ("IMEI") number 356611281087480 (the "SUBJECT DEVICE").

## PROBABLE CAUSE

I.     The Complaint

5.     On June 22, 2022, the Honorable Cheryl L. Pollak, Chief United States Magistrate Judge, Eastern District of New York, issued an arrest warrant for LAQASHA DOUGLAS ("DOUGLAS") based on allegations set forth in a Complaint and Affidavit in Support of Arrest Warrant ("Complaint") establishing probable cause to believe that DOUGLAS had engaged in unlawful firearms trafficking, in violation of 18 U.S.C. § 922(a)(5).  See 22-MJ-660 (E.D.N.Y.).  The Complaint is attached hereto as Exhibit A, and the allegations in the Complaint are incorporated by reference herein.

6.     For the reasons set forth in Exhibit A, there is probable cause to believe that DOUGLAS has engaged in unlawful firearms trafficking, in violation of 18 U.S.C. § 922(a)(5) (the "SUBJECT OFFENSE").

2

7.      Moreover, as set forth in Exhibit A, there is probable cause to believe that DOUGLAS used her cellular telephone with a certain telephone number ending in 1545 (the "1545 Number") to commit the SUBJECT OFFENSE.

II.     Recent Conversations with DOUGLAS Concerning the Purchase of Additional Firearms

8.      On or about June 14, 2022, a DEA law enforcement agent acting in an undercover capacity (the "UC") renewed communications with DOUGLAS about purchasing additional firearms.  These communications were by telephone, and DOUGLAS continued to use the same 1545 Number.

9.      Specifically, on or about June 14, 2022, the UC and DOUGLAS (using the 1545 Number) exchanged the following text messages:

| UC: | Mamas……. I hav a new phone. It been too long. Evry thing good? |
|---|---|
| DOUGLAS: | Yes love it is ..Hope all is well |
| UC: | I sorry I havent reach out. I coming to NC soon. Maybe you coud get me some? |
| DOUGLAS: | I most definitely can.... Just let me know when and how many?? |
| UC: | Ok ok. You could get the muflers [sic] for them or no? |
| DOUGLAS: | Ummmmm possibility |
| UC: | Ok. If you could its good. If no maybe just 2 or 3 size 9 |
| UC: | Okay Baby... I got you |

Based on my training, experience, and investigation of this case to date, I know that the UC was asking DOUGLAS about purchasing two or three 9mm caliber firearms ("just 2 or 3 size 9") and silencers ("muflers"), and that the UC intended to travel to North Carolina in the near future ("I

coming to NC soon"). DOUGLAS replied that she could provide two or three 9mm caliber firearms ("I got you"), but the silencers were only a "possibility."

10. On or about June 23, 2022, the UC texted DOUGLAS that the UC would be in North Carolina on July 6, 2022. The UC and DOUGLAS then arranged by telephone to meet on July 6, 2022, so that the UC could purchase one or more additional firearms from DOUGLAS.

III.    The Arrest of DOUGLAS on July 6, 2022

11. On or about July 6, 2022, DOUGLAS arrived by car at a certain location in Charlotte, North Carolina, where she had previously agreed to meet the UC.

12. Law enforcement agents then arrested DOUGLAS at the meeting location. Agents seized the SUBJECT DEVICE from DOUGLAS incident to her arrest.

13. Following her arrest, law enforcement agents advised DOUGLAS of her Miranda rights, and DOUGLAS waived her Miranda rights both verbally and in writing.

14. DOUGLAS then made the following statements to law enforcement agents, in sum and substance and in part:

a.    DOUGLAS stated that the SUBJECT DEVICE belonged to her, and that her telephone number was the 1545 Number.

b.    DOUGLAS admitted that she had previously sold a firearm to an individual in New York City in 2020, and that she communicated with that individual by telephone about the firearm sale.

c.    DOUGLAS admitted that, on the day of her arrest, she was planning to meet with an individual to sell him a firearm.

4

15.     The SUBJECT DEVICE is currently located in the Eastern District of New York in the custody of the DEA.  In my training and experience, I know that the SUBJECT DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT DEVICE first came into the possession of the DEA.

16.     In addition to the information set forth above, based on my training, experience, and investigation of this case to date, I understand that individuals who engage in the interstate trafficking of firearms often communicate via cellular telephones, text messages, email, internet web-based accounts, and social media with potential buyers.  These communications commonly include photographs of firearms, information about firearms, and information concerning methods of payment.

**<u>TECHNICAL TERMS</u>**

17.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     <u>Wireless telephone</u>:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and

playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

        b.    Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

        c.    Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

        d.    GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.

These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

       e.      <u>PDA</u>:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

       f.      <u>IP Address</u>: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from

7

and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18.     Based on my training, experience, and research, I know that the SUBJECT DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

19.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.   Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

20.     Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, the purpose of their use, who used them, and when.  There is

probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21.    <u>Nature of examination</u>.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the SUBJECT DEVICE to human inspection in order to determine whether it is evidence described by the warrant.

22.    <u>Manner of execution</u>.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23.     I submit that this affidavit supports probable cause for the issuance of a search warrant authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek the items described in Attachment B.

24.     Because the SUBJECT DEVICE is already within the custody of law enforcement authorities, I further request that the Court authorize execution of the warrant at any time of day or night.

Respectfully submitted,

MILTON CASIANO
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me by telephone
on July __, 2022:

THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

11

# **ATTACHMENT A**

The property to be searched is particularly described as one Motorola Moto G Stylus 5G cellular telephone with International Mobile Equipment Identity ("IMEI") number 356611281087480, currently located in the custody of the Drug Enforcement Administration ("DEA") in the Eastern District of New York (the "SUBJECT DEVICE").

This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.       All records and information on the SUBJECT DEVICE described in Attachment A that constitute fruits, evidence and instrumentalities of violations of 18 U.S.C. § 922(a)(5) (unlawful firearms trafficking) involving LAQASHA DOUGLAS ("DOUGLAS") and any co-conspirators from May 1, 2020 to the present, including:

        a.       communications relating to the purchase, sale, transfer, transportation, or delivery of firearms;

        b.       any internet or search history relating to the purchase, sale, transfer, transportation, or delivery of firearms;

        c.       photographs, videos, notes, or sound recordings relating to the purchase, sale, transfer, transportation, or delivery of firearms; and

        d.       financial records relating to the purchase, sale, transfer, transportation.

        As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

        This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the law enforcement agents may deliver a complete copy of the seized or copied

electronic data to the custody and control of attorneys for the government and their support staff

for their independent review.

# Exhibit A

TH:NJM/MWG
F. #2020R00865/OCDETF#NY-NYE-0898

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

LAQASHA DOUGLAS,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR AN ARREST WARRANT

Case No. 22-MJ-660

(T. 18, U.S.C., § 922(a)(5))

EASTERN DISTRICT OF NEW YORK, SS:

          MILTON CASIANO, being duly sworn, deposes and states that he is a Task

Force Officer with the Drug Enforcement Administration, duly appointed according to law and

acting as such.

          In or about November 2020, within the Eastern District of New York and

elsewhere, the defendant LAQASHA DOUGLAS, not being a licensed importer, licensed

manufacturer, licensed dealer or licensed collector of firearms, together with others, did

knowingly and willfully transfer, sell, trade, give, transport, or deliver one or more firearms to

one or more persons other than licensed importers, licensed manufacturers, licensed dealers or

licensed collectors, knowing or having reasonable cause to believe that such persons did not

reside in North Carolina, the state in which DOUGLAS resided.

          (Title 18, United States Code, Section 922(a)(5))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.     I am a Task Force Officer with the Drug Enforcement Administration ("DEA") and an Investigator with the New York State Police.   I have been a DEA Task Force Officer and an Investigator with the New York State Police since approximately 2019, and I previously served as a Trooper with the New York State Police since approximately 2013.   I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file, and from reports of other law enforcement officers involved in the investigation.

2.     Beginning in or about August 2020, a DEA law enforcement agent acting in an undercover capacity (the "UC") began to communicate by telephone with DOUGLAS about purchasing firearms.   At all times relevant to this complaint, DOUGLAS resided in North Carolina.   The UC informed DOUGLAS that he resided in New York City.

3.     On or about August 27, 2020, the UC called a telephone number ending in 1545 (the "1545 Number"), which was subscribed in DOUGLAS's name.   The UC and DOUGLAS had the following conversation, in sum and substance and in part, which was recorded:

UC:          OK, listen, I don't know what he tell you, but, you know, I'm looking for some shoes, you know, from down there?   I looking for, you know, the sneaker, or maybe the shoe, like a size 9, but I take whatever sizes you have, you know?   I take everything.

DOUGLAS:     OK, I got you, boo.   I got you.

---

[1]     Because the purpose of this complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

| UC: | You know, so, you just tell me however much, for whatever, and, you know, and maybe you, you, you just let me know.  I take it whatever you got, you know? |
|---|---|
| DOUGLAS: | I got you, hun.   I got you. |
| UC: | OK. |
| DOUGLAS: | OK, so, let me check, let me check on my inventory. |

Based on my training, experience, and investigation of this case to date, including debriefings of the UC, I know that the UC was referring to firearms as "shoes" and "sneakers," and that "size 9" was a reference to a 9mm caliber firearm.

4.      Later that day, the UC sent the following text message to DOUGLAS at the 1545 Number: "Mami wen u hav sonetings sen me   pictore...ok."   Based on my training, experience, and investigation of this case to date, including debriefings of the UC, I know that the UC was asking for DOUGLAS to send him photographs of firearms.

5.      On or about September 6, 2020, at approximately 5:21 p.m., DOUGLAS (using the 1545 Number) sent the UC the following text message: "Happy Sunday I'm about to send some pics…"   Approximately thirty minutes later, DOUGLAS sent to the UC the following four photographs of firearms and information about firearms:

4









6.      Approximately one hour later, DOUGLAS sent the following text message to the UC: "Let me know of specifics that u need."   The UC replied: "I take everything.   More the ones for da hand but whatever u have."   Based on my training, experience, and investigation of this case to date, including debriefings of the UC, I know that the UC was expressing a preference for handguns ("ones for da hand").

7.      The UC and DOUGLAS continued to exchange messages concerning the UC's purchase of a firearm from DOUGLAS throughout October and November 2020.   In one message sent on or about October 6, 2020, DOUGLAS explained that there were "money issues" and that it would be difficult to have someone drive a firearm up to New York City because "[t]hey are searching vehicles once u enter certain parts of states."

8.      On or about November 4, 2020, DOUGLAS asked if the UC could provide an address to receive a shipment of firearms.   Specifically, DOUGLAS (using the 1545 Number) and the UC exchanged the following messages:

> DOUGLAS:   Hola papi...hope you are well...do you have a secure address that I can ship them to?
>
> UC:      Hola amor.    Juan Munoz......41 Schermerhorn St. #239 Brooklyn, NY 11201.

9.      Ten days later, on or about November 14, 2020, DOUGLAS called the UC, and DOUGLAS and the UC had the following conversation, in sum and substance and in part:

> DOUGLAS:   I'm going to FedEx right now.
>
> UC:      Ok.   You could put whatever name for your side, pero, for my side, you have to put the name that I send, sent to you.

10.     Later that day, at approximately 2:06 p.m., DOUGLAS sent the following text message to DOUGLAS: "Im here now papi...they have to use my name..had to show id."

DOUGLAS then sent the UC photographs of the shipping label and receipt, including this photograph of the FedEx shipping label:



As shown above, the shipping label states that the sender was "Laqasha Douglas" in Charlotte, North Carolina.   The listed tracking number was 3989 3253 7340.

11.     Several minutes after receiving these photographs, the UC sent a text message to DOUGLAS thanking her for sending the firearm, and DOUGLAS replied: "My name is laqasha douglas."

12.     On or about November 17, 2020, DEA agents requested that FedEx intercept the above-referenced shipment with tracking number was 3989 3253 7340.   I then retrieved the shipment from a FedEx shipping center in Brooklyn, New York.   Below is a photograph of the shipment that I intercepted, which had the same shipping label as the above-described shipping label that DOUGLAS sent to the UC:



13.     Inside the box was one Hi-Point model CF380 .380 caliber firearm with serial number P8180264 and one magazine with no ammunition.

14.     Later that day, DOUGLAS asked, in sum and substance, if the UC had sent payment for the firearm through MoneyGram.   The UC responded, in sum and substance,

8

that he had sent $650 to DOUGLAS through Western Union and sent to DOUGLAS a

photograph of a Western Union receipt showing a transfer of $650 to "Laqasha Douglas."

15.    It is respectfully requested that this Court issue an order sealing, until

further order of the Court, all papers submitted in support of this application, including the

application and arrest warrant.   The defendant is currently at liberty, and disclosure of the papers

submitted in support of this application would give the defendant an opportunity to change

patterns of behavior and flee from or evade prosecution, and would therefore have a significant

and negative impact on the continuing investigation and may severely jeopardize its

effectiveness.

WHEREFORE, your deponent respectfully requests that an arrest warrant be

issued for the defendant LAQASHA DOUGLAS, so that she may be dealt with according to law.

MILTON CASIANO
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
22 __ day of June, 2022

THE HONORABLE CHERYL L. POLLAK
CHIEF UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )   Case No. |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant* | |

## ARREST WARRANT

To:      Any authorized law enforcement officer

   **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)* _____ ,

who is accused of an offense or violation based on the following document filed with the court:

❑ Indictment     ❑ Superseding Indictment     ❑ Information     ❑ Superseding Information     ❑ Complaint

❑ Probation Violation Petition     ❑ Supervised Release Violation Petition     ❑ Violation Notice     ❑ Order of the Court

This offense is briefly described as follows:

Date: _____

*Cheryl Pollak*

_____
*Issuing officer's signature*

City and state: _____

_____
*Printed name and title*

| **Return** |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| |
| Date: _____ |
| _____ |
| *Arresting officer's signature* |
| |
| _____ |
| *Printed name and title* |

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

_____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____      Weight: _____

Sex: _____      Race: _____

Hair: _____      Eyes: _____

Scars, tattoos, other distinguishing marks: _____

_____

History of violence, weapons, drug use: _____

_____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

_____

FBI number: _____

Complete description of auto: _____

_____

Investigative agency and address: _____

_____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

_____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____

_____